# EXHIBIT 3

## EMPLOYMENT AGREEMENT

In this EMPLOYMENT AGREEMENT (the "*Agreement*"), the terms "*we*," "*us*," "*our*," and "*the Company*" mean, collectively, XPO LOGISTICS, INC., a Delaware corporation, together with its existing and future subsidiaries and controlled affiliates. "*You*," "*your*," "*me*" and "*the Employee*" mean the specific employee of the Company whose signature appears on the last page of this Agreement. To help explain the obligations created under this Agreement, we use certain capitalized terms (e.g., "*Confidential Information*," "*Cause*," etc.), which are defined (in alphabetical order) in Section 19, below.

### Background Information

This Agreement is a condition of your employment by the Company. You acknowledge that we are employing you in consideration for your execution and delivery of this Agreement.

We are a third-party transportation logistics business. Our customer and carrier lists, pricing strategies, operating processes, methods and procedures, our information technology, our training programs, our business plans, and our other highly confidential or proprietary information are of vital importance to us. We therefore need to be sure that our employees agree to protect the Company regarding these matters, including, for example, our Confidential Information, our intellectual property, returning Company property upon our request, not trying to hire away our employees, not competing with us, not soliciting our customers, not saying bad things about us, and certain other matters as set forth in this Agreement.

### Agreement

In consideration of the Background Information above (which constitutes an important part of this Agreement) and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, you and the Company agree as follows:

1. *Employment At-Will.* We desire to employ you and you desire to be employed by us. Nothing in this Agreement changes your at-will employment status or confers any right with respect to continuation of employment by us, and nothing in this Agreement interferes in any way with your right or our right to terminate your employment at any time, with or without Cause or advance notice.

2. *Confidentiality Covenant.* You agree to use our Confidential Information only for our benefit. You agree that other than as required by you to perform your duties for us, you will not, at any time, directly or indirectly use, disclose or copy our Confidential Information or assist any other person or entity to do so.

3. *Return of Company Property When Requested.* You agree to promptly return to us when we request, but in any event by the last day of your employment with us, all of our Confidential Information and all other Company property (tangible or intangible) in your possession or control (e.g., all documents, data, recordings, smartphones, computers and other business equipment, inclusive of all information stored in electronic form), obtained or prepared by or for and utilized by you in the course of your employment, all of which you acknowledge and agree is and shall remain our sole and exclusive property.

4. *Ownership of Intellectual Property.* Except as otherwise provided by applicable law, you agree that all "*Work Product*" (as that term is defined in Section 19) created in whole or in part by you while employed by us is our exclusive property, and that you will promptly, fully and effectively communicate

all Work Product to us. Accordingly, you agree that all Work Product eligible for any form of copyright protection made or contributed to in whole or in part by you within the scope of your employment while so employed shall be deemed a "*work made for hire*" under the copyright laws and shall be owned by us. Further, you hereby now (and upon our request, in the future you will) assign, transfer and convey to us, all of your "*Proprietary Rights*" (as that term is defined in Section 19) in all Work Product for our exclusive ownership and use, together with all rights to sue and recover for past and future infringement or misappropriation thereof. In addition, at our request, at all times while you are employed by us and at all times thereafter, you agree to promptly and fully assist us in effecting the foregoing assignment, including but not limited to the further acts of executing any and all documents necessary for us to secure for ourselves such Proprietary Rights in all such Work Product. YOU ARE HEREBY ADVISED, HOWEVER, THAT THE FOREGOING PROVISIONS DO NOT APPLY TO any invention (i) for which none of our equipment, supplies, facilities or Confidential Information were used, and (ii) developed entirely on your own time, unless the invention relates to our businesses or any actual or demonstrably anticipated research or development, or results from any work performed by you for us.

5.   *Covenant Not to Hire the Company's Employees and Others.*  While employed by us and for two (2) years thereafter, you agree not to directly or indirectly hire or interfere (or try to hire or interfere) in any way with (or help any other person or party to (or to try to) hire or in any way to interfere with) our relationship with (i) any of our employees, (ii) any of our independent contractors (iii) any employee of a third party that has an "independent participant" relationship with us and (iv) any person who at any time during the six (6) months prior to such hiring or interference was described by clauses (i), (ii) or (iii) of this paragraph. This undertaking on your part for our benefit is called your "*Anti-Hiring Covenant*."

6.   *Covenant Not to Solicit the Company's Restricted Customers and Carriers.*

(a)   *Agreement Not to Solicit.*  While employed by us and for the two (2) years thereafter, you agree that you will not (nor will you assist any other person or entity to), for any reason, either directly or indirectly, call on, contact, solicit or otherwise take away or disrupt, or attempt to call on, contact, solicit or otherwise take away or disrupt, our relationship with or business expectancy from any of our customers or carriers (i) on whose account you worked or with whom you had regular contact, or (ii) as to whom you had access to Confidential Information (in either instance at any time within the last one (1) year of your employment with us). This undertaking on your part for our benefit is called your "*Non-Solicit Covenant*."

(b)   *You Acknowledge the Legitimacy, Reasonableness and Fairness of Your Non-Solicit Covenant To Us.*  You acknowledge that: (i) in the course of performing your duties as a sales employee and/or an employee who has had and/or will have direct contact with our customers or carriers and/or access to proprietary information about them, you will have access to, and be regularly exposed to, and in some cases will generate and control, Confidential Information which is sensitive, and competitively valuable information about us; (ii) we have developed our Confidential Information through considerable time, effort and expense; (iii) our relationships with our customers, carriers, vendors, suppliers, business partners and employees, as well our Confidential Information, constitute valuable and legitimate protectable business interests of ours; (iv) your Non-Solicit Covenant is reasonable and necessary to protect those interests, our Confidential Information and our goodwill; and (v) your compliance with your Non-Solicit Covenant following termination of your employment will not prevent you from earning a livelihood in a business similar to our business, but, in any event, your experience and capabilities are such that you now have and will have other opportunities to earn a livelihood and adequate means of support for yourself and your dependents.

*Employment Agreement (9-10-13) -- Page 2*

7. *Covenant Not to Compete with Us.*

(a) *Duration and Geographic Scope.* While you are employed by us and for a period of six (6) months after your employment ends, whether on account of your resignation or because we terminated your employment with or without Cause, (the "*Restricted Period*"), you are not allowed to compete with us in the "*Restricted Territory*" (geographic area) fixed below. This undertaking on your part for our benefit is called your "*Non-Compete Covenant*."

(b) *Your Non-Compete Covenant to Us.* Subject to the Restricted Period extension and Non-Compete Covenant waiver provisions described below, you expressly agree that both while employed by us and during the Restricted Period, you will not (either directly or indirectly through others) have any of the following business relationships anywhere within your Restricted Territory:

(i) perform any services, whether as an employee, agent or independent contractor, which are the same as or reasonably related to the services you performed while employed by us during the last two years of your employment with us, for a "*Competing Business*" (defined below);

(ii) own any financial interest in a Competing Business (e.g., as a partner, member, principal, shareholder or other owner (other than a holder of less than 1% of the outstanding voting shares of any publicly held company)); or

(iii) loan money to, borrow money from, lease to, or have any other financial dealings with a Competing Business (except for ownership of less than 1% of the outstanding voting shares of any publicly held company).

(c) *Definition of a "Competing Business".* You and the Company agree that a "*Competing Business*" means any individual or business (e.g., a corporation, partnership or limited liability company) engaged in our business as we are conducting it on the date your employment with us ends (including any business we are then actively considering or were considering at any time during the 12 month period ending on the date of your termination), including by way of example:

(i) any providers of third-party logistics services, including only by way of illustration, freight brokerage, freight forwarding, expediting, internet load boards, last-mile delivery logistics or intermodal providers, or firms such as CH Robinson, Coyote Logistics, Expeditors International of Washington, Inc., Echo Global Logistics Inc., Total Quality Logistics, Roadrunner Transportation Systems, TransCore, Internet Truckstop LLC and Hub Group Inc.; and

(ii) an individual or business that otherwise competes with our business anywhere in the Restricted Territory.

(d) *Your Restricted Territory.* You agree that your "*Restricted Territory*" means:

(i) the territory within one hundred (100) miles from the principal office at which you are employed by us;

(ii) the territory within fifty (50) miles from any of our other offices in the United States and Canada; and

(iii)     anywhere in the United States and Canada where our customers are located or where we perform services for or on behalf of our customers or carriers.

(e)     ***Your Non-Compete Payments if We Terminate You Without Cause.*** While the primary consideration for your grant of your Non-Compete Covenant to us is our employment of you, as additional consideration to you for your entering into this Agreement with us, if we terminate your employment *without* Cause (i.e., your employment termination was not on account of your quitting or the Company's terminating your employment for Cause), then we will make "***Non-Compete Payments***" to you, ratably over the six (6) month post-employment Restricted Period in accordance with our normal payroll policies, each in an amount calculated as set forth in subsection (i) below, upon the condition that you first furnish us with a written general release in a form acceptable to us in our sole discretion.

(f)     ***Additional Non-Compete Payments and Extension of Your Restricted Period:*** We have the right, at our discretion, to extend your Restricted Period for up to eighteen (18) consecutive months in three (3) consecutive six-month extensions, but if we do so, we will make additional payments to you during that time, as described in subsection (j)(i) below ("***Additional Non-Compete Payments***").

(g)     ***Our Right to Waive Your Non-Compete Covenant and Avoid Non-Compete Payments:*** We recognize that our termination of your employment without Cause may occur at a time when then-relevant specific circumstances surrounding your termination and/or other business considerations cause us to conclude we do not need your Non-Compete Covenant. For that reason, we reserve the right to waive your Non-Compete Covenant, and if we elect to do so, you agree that no Non-Compete Payment will be due or payable to you.

(h)     ***Written Notice on Employment Termination – We Let You Know Whether You Are Bound by the Non-Compete Covenant:*** If we terminate your employment, it will be by written notice to you and indicating the effective date of your termination, by which we will either advise you (x) of your six (6) month Non-Compete Covenant and the amount of your monthly Non-Compete Payments, if any, or (y) alternatively, of our election to waive your Non-Compete Covenant.

(i)     ***Amount and Timing of Non-Compete Payments During Six (6) Month Restricted Period.*** If we terminate your employment without Cause and do not elect to waive your Non-Compete Covenant, the dollar amount of your monthly Non-Compete Payments will depend on the number of full calendar months you have been employed by us. During the post-employment Restricted Period, the aggregate amount that we will pay you, if applicable, will equal one (1) month of your "*Average Monthly Compensation*" for each full calendar month you were employed by us, up to a maximum of three (3) calendar months but not less than one (1) month (*e.g.*, if we terminate your employment without Cause after eight (8) full calendar months of employment, your Non-Compete Payment would be equal to three (3) months of your Average Monthly Compensation). This sum will be paid to you in six (6) equal Non-Compete Payments over that six (6) month Restricted Period in accordance with our payroll procedures on our normal pay periods. "***Average Monthly Compensation***" means your average monthly salary and incentive compensation you earned from us during the twelve (12) calendar months immediately preceding your termination date (or shorter period, if you were with us for less than twelve (12) months).

(j)     ***Additional Non-Compete Payments For Six (6) Month Extensions of Restricted Period:*** If we exercise our rights to extend your Restricted Period beyond its original six (6) month term, we will give you written notice of our first election not less than thirty (30) days before the expiration of the initial six (6) month Restricted Period, and, again at our election, by giving you written notice of our second extension election not less than thirty (30) days before the expiration of the first extension.

(i)     If we exercise these Restricted Period extension options, we will pay you "***Additional Non-Compete Payments***" for each month of that extension period (prorated for partial months), each in an amount equal to your Average Monthly Compensation, in accordance with our payroll procedures on our normal pay periods.

(ii)     You agree that if we elect to extend the Restricted Period, any money you earn for performing services for anyone else after the first six (6) months of the Restricted Period, whether as an employee or as an independent contractor, will reduce, dollar-for-dollar, the aggregate amount of the Additional Non-Compete Payments we will pay to you. Accordingly, you agree to promptly disclose to us the amount of any such earned income, and you agree, if we ask in writing, to promptly furnish us with a copy of your federal income tax return for the applicable calendar year(s) at any time within three (3) years following the date of your termination of employment.

(k)     *You Acknowledge the Legitimacy, Reasonableness and Fairness of Your Non-Compete Covenant To Us.* You acknowledge that: (i) in the course of performing your duties for us you will have access to and will become highly knowledgeable about our Confidential Information; (ii) your Non-Compete Covenant is essential to protect our business and goodwill because were you to enter into activities competitive with our business you would cause us substantial harm (and not only because of your post-employment activities, but because of the impact those activities might have on our other employees and former employees); and (iii) although your compliance with your Non-Compete Covenant may prevent you from earning a livelihood in a business similar to our business, your experience and capabilities are such that you now have and will have other opportunities to earn a livelihood and adequate means of support for yourself and your dependents.

(l)     *Consequences of Your Breach of Your Non-Compete Covenant:* We reserve the right to use any remedies available to us in law or in equity to enforce our rights under this Agreement, generally, and your Anti-Hiring Covenant, Non-Compete Covenant, Non-Solicit Covenant and other covenants to us set forth in this Agreement, specifically. However, in addition to any other legal remedies we may be entitled to, you agree that if you breach your Non-Compete Covenant to us, you will repay us all of the Non-Compete Payments we have made to you (net of any taxes paid by you on such payments).

8. *Adherence to Company Policies for the Avoidance of Questionable Transactions.* You agree that while employed by us, you will not enter into any written or verbal agreement or understanding with anyone else, whether a customer, employee, independent contractor or vendor of the Company or otherwise, directly or indirectly providing for the disbursement or receipt of any payments: (a) which involve any illegal purpose, or (b) which involve (i) illegal contributions or other distributions to any other private persons, government officials or employees, political candidates or parties, or (ii) kickbacks or bribes to any person. Further, to the extent within your control, while employed by us you will act to ensure that (i) the documentation of all of our business transactions in which you are involved properly describe the pertinent events, and (ii) the transaction records thereof are not false, distorted or misleading.

9. *Refraining from Disparaging Us.* While employed by us and thereafter, you agree never to disparage, malign or impugn us or any of our officers, directors and employees.

10. *Cooperating After Employment Ends.* While employed by us and thereafter, you agree to fully cooperate with us in connection with any investigation, suit, action or proceeding in which you may have relevant information or testimony, including but not limited to providing testimony at depositions or trial, which cooperation and appearance you fully agree to without the necessity of a subpoena or court order.

If your assistance is required after your employment has ended, we will reimburse you for your reasonable expenses and accommodate your personal and business schedule to the extent practicable.

11. *Giving Notice to a New Employer.* You agree that while the restrictions that apply to you under Sections 5, 6 and 7 of this Agreement remain in effect (pertaining to your Anti-Hiring Covenant, your Non-Compete Covenant and your Non-Solicit Covenant, respectively) you will provide any new employer written notice of each of those restrictions before you accept an offer of employment and concurrently provide to us a copy of each such written notice.

12. *Prohibited Use of Confidential Information of Your Prior Employers.* It is vital to us that you not disclose to us or use any information or materials that might constitute a former employer's confidential information you obtained while employed by that former employer. Accordingly, you (a) agree not to disclose or use any former employer's confidential information in any form unless you first obtained the prior written consent of that former employer, and (b) represent to us that you searched for and deleted any emails, documents or files prepared, generated, obtained or used by you that contain any such confidential information of a prior employer.

13. *Authority to Enter into this Agreement; No Conflicts.* You represent that you have the right to enter into this Agreement, that doing so is not and does not conflict with or breach any obligations you may have under any agreement you have or any court order, and that your signature on this Agreement makes it our valid and binding obligation, fully enforceable in accordance with its terms.

14. *Prior Restrictive Covenant Agreements to Which You Are Bound.* You represent to us that you: (a) have provided us true, correct and complete copies of any agreement to which you are subject containing non-competition, non-solicitation or similar restrictions or covenants in favor of any prior employer or other party; and (b) are free to enter into this Agreement and be employed by us in accordance with the terms of this Agreement without breaching or violating any such prior agreements.

15. *Employee Acknowledgements Regarding Termination for Cause.* You acknowledge that your breach of your representations, covenants and agreements set forth in Sections 2 through 14 hereof is grounds for immediate termination for Cause by us. You agree that if, subsequent to termination of your employment for any reason (but in no event more than six (6) months after the date of termination of your employment), it is determined in good faith by our CEO that we could have terminated your employment for Cause, your employment shall, at our election, be deemed to have been terminated for Cause retroactively to the date your employment terminated.

16. *Termination Certificate.* Immediately following your termination of employment for any reason other than on account of your death or total disability, you will promptly return to us all of our property, as required by the provisions of Section 3, and you will concurrently execute and deliver to us a termination certificate, in a form acceptable to us in our sole discretion, regarding matters such as your return of our property and your compliance, both at the time of termination and thereafter, with your obligations under this Agreement.

17. *Governing Law; Arbitration; Consent to Jurisdiction; and Waiver of Jury Trial.*

(a)     *Governing Law:* This Agreement shall be governed by and construed in accordance with its express terms, and otherwise in accordance with the laws of the State of North Carolina without reference to its principles of conflicts of law.

(b)     *Arbitration of Claims Initiated by You:* Any claim you wish to initiate arising out of or relating to this Agreement, the breach thereof, your employment with us, or the termination of that employment will be resolved by binding arbitration before a single arbitrator in the City of Charlotte, North Carolina administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(c)     *Claims by Us Initiated by Us:* Any claim initiated by us arising out of or relating to this Agreement, the breach thereof, your employment or its termination, shall, at our election, be resolved in accordance with Sections 17(b) or 17(d), in our sole discretion.

(d)     *Consent to Jurisdiction and Waiver of Jury Trial:* You hereby irrevocably submit to the jurisdiction of any state or federal court located in Mecklenburg County, North Carolina; provided, however, that nothing herein shall preclude us from bringing any suit, action or proceeding in any other court, including without limitation for the purposes of enforcing the provisions of this Section 17 or enforcing any judgment or award obtained by us. You waive, to the fullest extent permitted by applicable law, any objection you now or hereafter have to personal jurisdiction or to the laying of venue of any such suit, action or proceeding brought in an applicable court described in this Section 17(d), and agree that you will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any court. You further agree that, to the fullest extent permitted by applicable law, a final and non-appealable judgment in any suit, action or proceeding brought in any applicable court described in subsection (d) shall be conclusive and binding upon you and may be enforced in any other jurisdiction. To the extent that, notwithstanding Section 17(b), you bring an action in any court, you agree to do so exclusively in the state or federal court located in Mecklenburg County, North Carolina, provided that nothing herein shall waive the Company's right to demand that you comply with Section 17(b). YOU EXPRESSLY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL IN THE EVENT THAT ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH THEREOF, OR YOUR EMPLOYMENT, OR THE TERMINATION THEREOF, IS LITIGATED OR HEARD IN ANY COURT.

18.  *Remedies; Injunctions for Breaches of this Agreement.* All of Company's rights and remedies may be exercised alternatively or cumulatively to the fullest extent permitted by law. You acknowledge that in addition to the acknowledgements you made in Sections 6 and 7 of this Agreement, you have considered each of the other restrictive covenants set forth in this Agreement and stipulate that those covenants are likewise reasonable and necessary to protect us and our Confidential Information, business strategies, employee and customer relationships and goodwill, now existing or to be developed in the future. You hereby: (i) agree to comply with all of the restrictive covenants, (ii) waive any right to contest the reasonableness, validity, scope or enforceability of any of the restrictive covenants, or any other claim or defense related thereto; (iii) agree that injunctive relief would be the most practical and efficient remedy for us in the event of your breach; and (iv) agree that the Company, without having to post bond or prove a lack of an adequate remedy at law, shall be entitled to injunctive relief against any breach by you of a restrictive covenant, provided that the foregoing shall not prejudice our rights to require you to account for and pay over to us any compensation, profits, gains, or derived by you related to the breach, and you agree to be so responsible for such an accounting. You further agree that if you violate your Anti-Hiring Covenant, your Non-Compete Covenant, and/or your Non-Solicit Covenant set forth in Sections 5, 6 and 7 of this Agreement, respectively, the post-employment restricted time period therein set forth shall be extended by a period of time equal to that period beginning when your activities constituting such violation commenced and ending when such violative activities terminated.

19. ***Definitions.*** This Agreement uses the following defined terms; they are intended to have the broadest meaning allowed by law to afford us the greatest protection.

"***Cause***" shall mean, in connection with your employment, (1) your dereliction of duties, failure to perform your duties hereunder, or refusal or repeated failure to follow any lawful rules or directive of the Company; (2) abuse of or dependency on alcohol or drugs (illicit or otherwise) that adversely affects your performance of duties for us; (3) commission of any fraud, embezzlement, theft or dishonesty, or any misappropriation of money or other Company assets; (4) breach of your fiduciary duties to us; (5) any act, or failure to act, in bad faith to our detriment; (6) failure to cooperate in good faith with a governmental or internal Company investigation or any of our directors, managers, officers or employees, if your cooperation is requested; (7) conviction of, or plea of *nolo contendere* to, a felony or any serious crime; or (8) your material breach of any representation, warranty or agreement created by this Agreement or any of our policies.

"***Confidential Information***" means all information, written (whether generated or stored on magnetic, digital, photographic or other media) or oral, not generally known, or proprietary to us about our businesses, affairs, operations, products, services, customer and carrier lists, pricing strategies, operating processes, business methods and procedures, information technology and information-gathering techniques and methods, business plans, financial affairs, and all other accumulated data, listings, or similar recorded matter useful in the businesses of the Company, including by way of illustration and not limitation:

- information about the business, affairs or operation of the Company developed by you or which is furnished to you by us during your employment;
- operating instructions, training manuals, procedures, and similar information;
- information about customers, carriers, vendors and other with whom we do business (e.g. customer, carrier or vendor lists, pricing, contracts, and activity records);
- information about sales and marketing (e.g., plans and strategies);
- information about any other third parties we have a business relationship with or owe a duty of confidentiality; and
- all notes, observations, data, analyses, compilations, forecasts, studies or other documents prepared by you that contain or reflect any Confidential Information and which is not known to the public generally other than as a result of your breach of this Agreement.

However, the Company expressly acknowledges and agrees that the term "Confidential Information" excludes information which (A) is in the public domain or otherwise generally known to the trade, or (B) is disclosed to third parties other than by reason of your breach of your confidentiality obligations under this Agreement or (C) is learned of by you after the termination of your employment from any other party not then under an obligation of confidentiality to us.

"***Proprietary Rights***" means all right, title and interest regarding all inventions, ideas, improvements, designs, processes, trademarks, service marks, trade names, trade secrets, trade dress, data, discoveries, Work Product, and any other proprietary assets or rights.

"***Work Product***" means all works of authorship, research, discoveries, inventions and innovations (whether or not reduced to practice or documented), improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information (whether patentable or un-patentable, and whether or not reduced to writing), trade secrets and Confidential Information, copyrightable works, and similar and related information (in whatever form or medium). As examples, this definition applies to anything to do with the Company's actual or anticipated business, research and development or existing

or future products or services. It applies to the results from any work performed by you for us. It also applies to anything conceived, developed, made or contributed to in whole or in part by you while employed by us.

### 20. *Other Agreements.*

(a)     *Notices.* Except as otherwise provided, we can give you notice at your last known principal residence listed on our records. You, in turn, may give us notice to XPO Logistics, Inc., Five Greenwich Office Park, Greenwich, CT 06831, Attention: General Counsel. Either you or the Company may provide another address for notice by written notice to the other. Notice is deemed given as follows: when delivered personally; four (4) days after it is mailed by registered or certified mail, postage prepaid, return receipt requested; or one day after it is sent by overnight courier service via UPS or FedEx.

(b)     *Interpretation.* You agree that to the extent you become bound by a prior or subsequent written agreement with us setting forth confidentiality, non-solicit, anti-hiring, non-compete and similar covenants in favor of us, such prior or subsequent agreement shall be enforceable independent of this Agreement, and shall not be deemed to modify or supersede this Agreement in any way, or to be modified or superseded by this Agreement in any way. You and we acknowledge that it is our common and mutual intention that, notwithstanding the terms of any such prior or subsequent agreement, this Agreement and each such prior or subsequent agreement shall be enforceable severally, and that you will be bound by and subject to the most restrictive and comprehensive restrictive covenants in any agreement with us to which you are a party. You and we further expressly acknowledge and agree that there are no oral agreements between you and us pertaining to the subject matter hereof.

(c)     *Amendment; No Waiver.* You and we agree that (i) this Agreement may not be amended except in writing signed by both you and us, (ii) the application of any provision of this Agreement may be waived only by a written instrument specifically identifying the provision whose application is being waived and signed by you and us, and (iii) no waiver by either you or us of a breach by the other shall be a waiver of any preceding or succeeding breach, and no waiver by you or us of any right under this Agreement shall be construed as a waiver of any other right.

(e)     *Your due diligence.* You acknowledge that: (i) you have had a full opportunity to read and understand this Agreement and consult with such attorneys, accountants, business advisors, and other consultants as you deem necessary or advisable; (ii) you have had an opportunity to contribute to the revision of this Agreement as you saw fit; and (iii) this Agreement shall not be construed against one party or the other in the event of any ambiguity.

(f)     *Survival.* The provisions of this Agreement shall survive termination of your employment regardless of the reason, and our assignment thereof to any successor-in-interest or other assignee.

(g)     *Severability.* If any provision of this Agreement or its application is held invalid, such invalidation shall not affect other provisions or applications hereof which can be given effect without the invalid provisions or applications, and so that this objective may be achieved, the provisions hereof are declared to be severable. In the event of a final, non-reviewable, non-appealable determination that any covenant of yours set forth in this Agreement (whether in whole or in part) is void or constitutes an unreasonable restriction against you, such provision shall not be rendered void but shall be deemed to be modified to the minimum extent necessary to make such provision enforceable for the longest duration and the greatest scope as may constitute a reasonable restriction under the circumstances

(h)    **Counterparts.** This Agreement may be executed in multiple originals. Signatures delivered by facsimile or electronic means (including by "pdf") shall be deemed effective for all purposes.

(i)    **Headings.** The Section and subsection headings in this Agreement are for convenience only and shall not affect the meaning of any provision.

\*    \*    \*    \*    \*

This Agreement is executed on the date shown below.

**XPO LOGISTICS, INC.**, a Delaware corporation, for itself and its subsidiaries and affiliates

By: _____

Name:  Gordon E. Devens
Title:    Senior Vice President and General Counsel

By: _____
      Employee Signature

Samt Wan Thomas
Employee Name (Print)

5/14/14
Date

*Employment Agreement (9-10-13) -- Page 10*