UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XPO LOGISTICS, INC., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 17 C 1946 ) ) Judge Sara L. Ellis |
| BEST DEDICATED SOLUTIONS, LLC, an Illinois limited liability company, and ROBERT BILCOX, KAREN CULVER, PATRICK GOOD, JENNIFER GREENHILL, WILLIAM PARKE, SAMTWAN THOMAS, and DANIEL VESTAL, individually, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

After some of Plaintiff XPO Logistics, Inc.'s ("XPO") employees left their positions to work for a direct competitor, Defendant Best Dedicated Solutions, LLC ("BDS"), allegedly taking XPO's trade secrets and customers with them, XPO brought this action for injunctive relief and damages against BDS and the former employees: Robert Bilcox, Karen Culver, Patrick Good, Jennifer Greenhill, William Parke, Samtwan Thomas, and Daniel Vestal (collectively, the "Individual Defendants"). Among other claims, XPO alleges that BDS violated the Illinois Trade Secret Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq*. (Count VIII), and committed the following common law torts: tortious interference with XPO's business relationships and/or expectancy with its customers (Count VI) and unfair competition (Count IX). XPO also alleges that all Defendants engaged in a civil conspiracy when they conspired to breach the Individual Defendants' post-employment obligations to XPO and to misappropriate XPO's trade secrets (Count X). Defendants move to dismiss Counts VI, IX, and X as preempted by ITSA.

Defendants also argue that if the Court finds that the civil conspiracy claim (Count X) is not preempted, that claim nevertheless fails pursuant to the intracorporate conspiracy doctrine. The Court finds that ITSA preempts XPO's tortious interference, unfair competition, and civil conspiracy claims to the extent they are based on the misappropriation of confidential information, but the remainder of these claims may proceed because they seek recovery independent of the alleged misappropriation. And because the Individual Defendants were not employed by BDS when they allegedly conspired with BDS, the Court cannot find that the intracorporate conspiracy doctrine applies at this time.

## BACKGROUND[1]

XPO and BDS directly compete in the global transportation and logistics industries, with XPO having freight brokerage locations currently in Bannockburn and previously in Lake Forest, Illinois and BDS being based in Libertyville, Illinois. XPO provides comprehensive supply chain solutions to its customers and utilizes Freight Optimizer, a proprietary software platform, to assist in the running of its business. This program stores XPO's trade secrets and confidential information including customer contact information and order history, vendor contact and pricing information, product cost and pricing information, and XPO's sales history. Only select employees can access the program with XPO-provided login information, and they must access it either within XPO's facilities or from a private network on an XPO-owned laptop.

The Individual Defendants signed comparable employment agreements with XPO that included non-competition, non-solicitation, and non-disclosure provisions. The non-competition provisions required the Individual Defendants not to compete with XPO for a period of six

---

[1] The facts in the background section are taken from XPO's complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL–CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

months. In the non-solicitation provision, the Individual Defendants agreed, for a period of two years, not to solicit XPO employees or customers with whom they worked or about whom they had access to confidential information in their last year of employment. Finally, the non-disclosure provision provided that the Individual Defendants would not disclose any of XPO's confidential information during and after their employment with XPO.

Bilcox began working for XPO as a Senior Account Executive on February 22, 2013, when XPO acquired his prior employer. Greenhill, Thomas, and Vestal all worked under his supervision. Greenhill worked as an Account Manager for XPO, beginning at the same time as Bilcox. Thomas, hired on May 14, 2014, was XPO's Carrier Sales Representative. Vestal began working as a Carrier Procurement Representative for XPO on March 31, 2014. XPO terminated Bilcox, Thomas, Greenhill, and Vestal on January 7, 2016 for wrongful workplace conduct. Soon thereafter, they all began working for BDS, with BDS "hir[ing] Bilcox with the purpose of having him solicit and hire other XPO employees, in violation of his and the Individual Defendant's respective Employment Agreements, and with the purpose of misappropriating business from XPO." Doc. 1 ¶ 86. Bilcox, as Managing Director of Strategic Accounts for BDS, then solicited his former XPO coworkers, including Thomas, Greenhill, and Vestal, to join him at BDS. Additionally, Parke, who had worked at XPO as a Senior Carrier Procurement Representative, resigned from XPO on March 11, 2016 and began working for BDS no later than July 8, 2016. Good resigned from his position as an Account Executive for XPO on September 12, 2016 and joined BDS five days later. Culver, an XPO Account Manager, informed XPO she was retiring on November 4, 2016, only to begin working for BDS five days later.[2]

---

[2] The complaint uses two dates for Culver's alleged retirement, November 4 and December 4. *Compare* Doc. 1 ¶ 20, *with id.* ¶ 73. Because XPO alleges Culver started at BDS on November 9, the Court uses the November date.

3

BDS "recruited and hired the Individual Defendants with the intent to induce them to disclose to BDS their knowledge of XPO's confidential business information," seeking "to shortcut the years of hard work and investment borne by XPO . . . to gain an unfair competitive advantage in the marketplace." *Id.* ¶¶ 83, 87. Before leaving XPO, the Individual Defendants accessed and removed confidential information, including XPO's carrier packet and agreement as well as a confidential DAT Keypoint TMS data set,[3] from their XPO-owned computers and shared them with BDS to unfairly compete with XPO. The Individual Defendants, on behalf of BDS, have also engaged with customers and carriers with whom they had contact with and about whom they learned confidential and proprietary information while employed by XPO. XPO has sent letters to BDS, Bilcox, Good, and Parke demanding that they abide by the Individual Defendants' contractual obligations to no avail.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[3] The DAT Keypoint TMS data set included information regarding XPO's historical, sales, and customer data.

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.  ITSA Preemption**

BDS argues that because XPO's common law claims for tortious interference with business relationships, unfair competition, and civil conspiracy are based on the misappropriation of XPO's trade secrets, they are preempted by ITSA. ITSA "abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." *Hecny Transp. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) (citing 765 Ill. Comp. Stat. 1065/8(a)). Where a claim is predicated on the misuse of confidential or secret information, that claim is preempted by ITSA. *Automed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001). Where a claim would survive regardless of whether the information at issue was non-confidential, however, that claim is not preempted. *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 802 (N.D. Ill. 2016) ("[T]he crux of the question has been whether the claim would lie if the information at issue were not confidential."); *RTC Indus., Inc. v. Haddon*, No. 06 C 5734, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007). In other words, "when considering whether the ITSA preempts a separate claim, a court must determine whether that separate claim seek[s] recovery for wrongs beyond the mere misappropriation." *Lumenate Techs., LP v. Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *7 (N.D. Ill. Nov. 11, 2013) (alteration in original) (quoting *Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *4 (N.D. Ill. Sept. 27, 2005)). The Court thus reviews the claims that Defendants challenge to determine whether they depend on the

misappropriation of a trade secret. *See Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 972 (N.D. Ill. 2000).

### A. Tortious Interference with Business Relationships (Count VI)

XPO alleges that BDS purposefully "interfered with XPO's business relationship with its customers by soliciting, or otherwise conducting business with, XPO's customers and by inducing XPO's former employees to breach their post-employment contractual obligations to XPO, to solicit XPO's customers, and to disclose XPO's confidential information." Doc. 1 ¶ 159. BDS argues that ITSA preempts XPO's tortious interference claim because the claim "flow[s] entirely from the allegations that the Individual Defendants misappropriated XPO's trade secrets for BDS's benefit and thereby prevented [XPO] from having prospective dealings with its alleged clients." Doc. 22 at 4. To the extent the claim involves misappropriation and disclosure of XPO's confidential information, that part of the claim is preempted. *See Traffic Tech, Inc. v. Kreiter*, No. 14-cv-7528, 2015 WL 9259544, at *15 (N.D. Ill. Dec. 18, 2015). But XPO's tortious interference claim also "seek[s] recovery for wrongs beyond the mere misappropriation" of trade secret or confidential information. *Lumenate*, 2013 WL 5974731, at *7. It seeks recovery for the alleged damage BDS caused by raiding XPO's employees and thereafter using those employees and their knowledge of XPO's practices and customer relationships to solicit XPO's customers, thereby interfering with XPO's prospective business opportunities. *See, e.g.*, Doc. 1 ¶¶ 34, 82, 85–86, 91. As such, this portion of XPO's claim remains because it rests on XPO's allegations that BDS solicited XPO's employees and induced them to breach their post-employment non-solicitation of customer agreements. *See Hecny*, 430 F.3d at 405.

## B. Unfair Competition (Count IX)

For its unfair competition claim, XPO alleges that "BDS, with the assistance of the Individual Defendants after they had been enticed to join BDS, has systematically raided XPO's work force in order to (i) bolster and expand its own business performance, and (ii) obtain and exploit XPO's confidential, proprietary, trade secret, and highly sensitive business information." Doc. 1 ¶ 188. As with the tortious interference claim, BDS argues that ITSA preempts XPO's unfair competition claim because the conduct giving rise to the unfair competition claim also underlies XPO's ITSA claim. The Court, again, disagrees in part. Although a portion of XPO's unjust enrichment claim involves its confidential information, the claim reaches more broadly to BDS' raiding of XPO's workforce to "bolster and expand its own business performance." *Id.* To the extent the unfair competition claim depends on the misappropriation of confidential or trade secret information, the Court finds that part of the claim preempted. *See Traffic Tech, Inc.*, 2015 WL 9259544, at *15. But to the extent XPO seeks to hold BDS liable for raiding its workforce to unfairly compete with XPO based not on the misappropriation of confidential information but rather on the solicitation of XPO customers and employees, the unfair competition claim avoids ITSA preemption. *See Christopher Glass & Aluminum, Inc. v. O'Keefe*, No. 1:16-cv-11532, 2017 WL 2834536, at *4 (N.D. Ill. 2017) (finding portions of breach of fiduciary duty claim not preempted by ITSA to the extent they involved defendant's solicitation of employees and customers); *IPOX Schuster, LLC*, 191 F. Supp. 3d at 803 (finding unjust enrichment claim based on misuse of plaintiff's trademark, reputation, and goodwill not preempted by ITSA); *Traffic Tech, Inc.*, 2015 WL 9259544, at *15 (allowing plaintiff to pursue unjust enrichment claim based on theory that defendant breached his promise not to steal corporate opportunities).

### C. Civil Conspiracy (Count X)

Finally, XPO alleges that BDS and the Individual Defendants "willingly conspired and agreed between themselves to breach the non-competition provisions, customer non-solicitation provisions, employee non-solicitation provisions, and/or confidentiality provisions contained in the Employment Agreements." Doc. 1 ¶ 197. Defendants again argue that ITSA preempts this claim because it is premised on the misappropriation of trade secrets. As with the unfair competition claim, to the extent the claim relies on the breach of the Individual Defendants' confidentiality provisions and misappropriation of XPO's trade secrets, *see id.* ¶¶ 197, 199, ITSA preempts those parts of the claim. But because the claim also involves allegations that BDS conspired with the Individual Defendants to breach the non-competition and non-solicitation provisions of their employment agreements, allegations which do not depend on the misappropriation of trade secrets, ITSA does not preempt these aspects of the civil conspiracy claim. *See Stereo Optical Co. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *5 (N.D. Ill. Sept. 8, 2008) (noting that where substantive claims on which civil conspiracy claim is based survive ITSA preemption, civil conspiracy claim also survives to the same extent).

## II. Intracorporate Conspiracy Doctrine (Count X)

Alternatively, Defendants argue that if ITSA does not preempt the civil conspiracy claim, the Court should dismiss the claim pursuant to the intracorporate conspiracy doctrine.[4] Under the intracorporate conspiracy doctrine, "[t]he acts of an agent are considered in law to be the acts of the principal. Thus a conspiracy does not exist between a principal and an agent or servant." *Salaymeh v. InterQual, Inc.*, 508 N.E.2d 1155, 1158, 155 Ill. App. 3d 1040, 108 Ill. Dec. 578

---

[4] To the extent Defendants argue in reply that the civil conspiracy claim also fails because the only unlawful act Defendants undertook in furtherance of the conspiracy is the misappropriation of trade secrets, which is preempted, the Court finds that argument waived as Defendants only raise this argument in their reply brief. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

8

(1987). Put differently, "if the challenged conduct is essentially a single wrongful act by a single entity, the fact that two or more agents participated in the decision or the act itself will generally not constitute a conspiracy." *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972).

Defendants argue that the Individual Defendants were agents of BDS because they worked for BDS at the time they allegedly conspired to breach their employment agreements, solicit employees and customers, and share confidential information with BDS. Doc. 22 at 7. XPO counters, however, that the intracorporate conspiracy doctrine does not bar its civil conspiracy claim because it does not apply where "individuals who at some point were or are employed by a corporation[ ] engaged in the conspiratorial conduct during a period outside of their employment term." Doc. 30 at 10. XPO claims that "the Individual Defendants conspired with each other during periods when some of them were not yet BDS's employees," pointing to both Good and Culver who voluntarily resigned and joined BDS five days later as examples of individuals who conspired with others at BDS while not yet BDS employees. *Id.* at 11. Based on these allegations, which the Court must take as true at this stage, the Court cannot find that the intracorporate conspiracy doctrine applies. XPO has adequately pled facts that suggest contact between the Individual Defendants and BDS prior to all of the Individual Defendants' terminations or resignations from XPO. *See* Doc. 1 ¶¶ 76–82 (alleging that the Individual Defendants removed confidential information from XPO prior to their termination and provided this information to BDS, that the Individual Defendants continue to disclose XPO strategies to BDS, and that some of the Individual Defendants worked with BDS to raid XPO's workforce). Because the complaint suggests that the Individual Defendants were not all employed by BDS when they engaged in some of this conduct, the Court cannot find that the complaint reveals that the intracorporate conspiracy doctrine precludes the civil conspiracy claim. *See, e.g.*, *Comsys*

*Inc. v. City of Kenosha, Wis.*, No. 16-CV-655-JPS, 2017 WL 1906750, at *14 n.5 (E.D. Wis. May 9, 2017) (finding that intracorporate conspiracy doctrine did not apply when one of the alleged members of the conspiracy took actions in furtherance of the conspiracy while still employed by the plaintiff); *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 1474795, at *6 (N.D. Ill. Apr. 12, 2010) (noting that although it may be possible to argue that all individual defendants were effectively defendant's agents even though still employed by plaintiff, "determination of their individual motivations is premature on a motion to dismiss," preventing the court from finding that the intracorporate conspiracy doctrine applied when for significant period of the alleged conspiracy, some of the defendants worked for plaintiff).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss Counts VI, IX, and X [21]. XPO may not proceed on its claims in Counts VI, IX, and X to the extent they depend on the existence of confidential information. The Court orders Defendants to answer the remaining unanswered allegations of the complaint by October 9, 2017.

Dated: September 18, 2017

SARA L. ELLIS
United States District Judge